The CONSTRUCTION INDUSTRY RETIREMENT FUND OF ROCKFORD, Plaintiff–Appellee,

v.

KASPER TRUCKING, INC., et al., Defendants–Appellants.

KASPER TRUCKING, INC., Plaintiff–Appellant,

v.

The CONSTRUCTION INDUSTRY WELFARE FUND, ROCKFORD, ILLINOIS, Defendant–Appellee.

No. 93–1330.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1993.

Decided Nov. 19, 1993.

Rehearing Denied Dec. 20, 1993.

Louis E. Sigman, Alan H. Auerbach (argued), James M. Neuman, Catherine Chapman, Baum & Sigman, Marc M. Pekay (argued), Chicago, IL, for plaintiff-appellee.

Jeffrey A. Ryva (argued), Husch & Eppenberger, Peoria, IL, James R. Pirages, Charles F. Helsten, Hinshaw & Culbertson, Rockford, IL, for Kasper Trucking, Inc.

Marc M. Pekay, Chicago, IL, for Construction Industry Welfare Fund, Rockford, IL.

Before COFFEY and EASTERBROOK, Circuit Judges, and FOREMAN, Senior District Judge.*

EASTERBROOK, Circuit Judge.

Kasper Trucking uses the services of drivers who own their own rigs. Between May 1984 and August 1986 Kasper treated them as employees for purposes of pension and health coverage, deducting money from their pay and remitting the sums to multiemployer plans covered by the Employee Retirement and Income Security Act (ERISA). Kasper eventually decided that the drivers are independent contractors who may not participate in the plans. It sent letters asking for refunds aggregating $85,000. The pension

---

* Hon. James L. Foreman, of the Southern District of Illinois, sitting by designation.

fund filed an action in the nature of interpleader offering to pay the money to its rightful owner. Kasper Trucking made a claim; so did some of the drivers. Kasper Trucking brought its own suit against the welfare fund, asking for a refund of the health insurance premiums. The district court awarded the pension money to the drivers and concluded that, because Kasper Trucking is not entitled to a refund, it lacks "standing" to sue the welfare fund. 1991 U.S.Dist. LEXIS 20838, 1992 WL 321515, 1992 U.S.Dist. LEXIS 16743, 1992 WL 406542, 1992 U.S.Dist. LEXIS 20392.

■ Kasper plainly has standing to sue the welfare fund. It paid the fund a large sum of money, which it wants back. If it prevails in the litigation, Kasper will be wealthier. A concrete dispute about who is entitled to a pot of cash is a routine case or controversy within Article III. Kasper may not prevail—the district court thought that it could not win, because the drivers should be the beneficiaries of any refund—but a litigant doomed to lose does not for that reason lack standing to sue.

■ Nothing in ERISA permits an employer to recover payments made as a result of a mistake in treating independent contractors as employees. Nonetheless, we held in *UIU Severance Pay Trust Fund v. Steelworkers Local No. 18–U*, 998 F.2d 509 (7th Cir.1993), that ERISA lets courts establish a federal common law governing restitution of mistaken payments. We stated: "because the cause of action we are authorizing is equitable in nature, recovery will not follow automatically upon a showing that the [employer] contributed more than was required but only if 'the equities favor it.'" *Id.* at 513. Kasper cannot recover from the welfare fund under this approach—and not just because the drivers have the superior equitable claim to the money. The welfare fund furnished the drivers with health insurance. That insurance remained in force while Kasper continued making contributions and lapsed when Kasper stopped. Just as a person who buys term life insurance may not obtain a "refund" if he survives the term, so a person who pays for health insurance cannot get his money back if he remains healthy. The welfare fund pooled the money to provide benefits for all persons on whose behalf contributions were made. Because the drivers received the health coverage for which they paid through the deductions Kasper sent to the fund, no one is entitled to restitution.

■ The pension fund's case is more complex, but only because of a jurisdictional problem. The district court ordered the pension fund to return the money to the drivers who made claims but did not say what is to become of the $13,361.66 in the accounts of the 16 drivers who did not make claims. (The pension fund is a defined contribution plan; each person on whose behalf contributions have been made has a separate account.) Does the pension fund keep the money? Does it revert to Kasper? Is it to be deposited in court and ultimately the Treasury? See 28 U.S.C. §§ 2041, 2042; *In re Folding Carton Antitrust Litigation*, 744 F.2d 1252 (7th Cir.1984). Does it go to the state by escheat? This question must be resolved in order to have a final decision. Instead of deciding the question, so that the whole case could proceed on a single appeal, the district court created a jurisdictional problem by omitting either to enter a judgment or to make the findings necessary to permit an appeal under Fed.R.Civ.P. 54(b). That rule permits an appeal when the judge finally resolves particular litigants' claims, but "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties". Both the "express determination" and the "express direction" are essential to appellate jurisdiction, *United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211 (7th Cir.1990); *Auriemma v. Chicago*, 906 F.2d 312 (7th Cir.1990), for the very good reason that the rule otherwise sets a trap. A litigant who does not appeal from a proper Rule 54(b) judgment is out of luck; an appeal at the end of the case does not present the issues covered by the Rule 54(b) judgment. *Exchange National Bank v.*

*Daniels,* 763 F.2d 286, 291–92 (7th Cir.1985). Thus we insist, in the language of the rule, that the determination and direction be "express," so that everyone knows exactly which mid-case decisions are appealable and which are not.

The district court's opinion contains the statement: "[T]here is no just cause for delay in the payment of money as indicated in Paragraph A above to those persons who have responded to the notice." This finding of "no just cause for delay" addresses delay in payment, not delay in the entry of judgment. No surprise, therefore, that the district judge did not make an "express direction for the entry of judgment", and there is, indeed, no judgment. The closest thing in the record is a minute order with the words: "Enter order regarding plan of distribution." This is not a judgment; it does not say who wins or how much the winner receives. *Reytblatt v. Denton,* 812 F.2d 1042 (7th Cir. 1987). The box checked on the form reads: "[Other docket entry]". We have held many times that such minute orders, which do not look even remotely like judgments, are not appealable. E.g., *Foremost Sales Promotions, Inc. v. Director, BATF,* 812 F.2d 1044 (7th Cir.1987); *Rappaport v. United States,* 557 F.2d 605 (7th Cir.1977). The clerk in the Northern District of Illinois enters such a minute order with every ruling by a district judge. Decisions concerning discovery, motions in limine, even motions for extension of time, all come with minute orders, most of which begin "enter order" and describe the order. A document that accompanies *every* ruling is not a good candidate for a judgment, which marks the end of the case in the district court. Rule 54(b) permits a district court to single out a few unusual orders for special treatment. A case in the Northern District of Illinois will have dozens of orders of the form: "enter order". Until something more definitive has been filed, a party need not appeal; and because this order does not mark the termination of the case, the practical finality approach of *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), does not establish appellate jurisdiction.

What does support an appeal, however, is the doctrine of *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), that orders to pay money immediately are appealable immediately, if they expose the payor to a substantial risk of being unable to recoup. This doctrine has been invoked in ERISA cases (although not by name) to permit immediate appeals of some orders to make interim payments when employers withdraw from multi-employer plans. *I.A.M. National Pension Fund v. Cooper Industries, Inc.,* 789 F.2d 21 (D.C.Cir.1986); *Korea Shipping Corp. v. New York Shipping Ass'n,* 811 F.2d 124 (2d Cir.1987). See *Chicago Truck Drivers Pension Fund v. Central Transport, Inc.,* 935 F.2d 114 (7th Cir.1991). Our court has generalized the approach under the banner of the collateral order doctrine, being careful to emphasize that appeal depends on a demonstration that the money, once disbursed, is effectively beyond recall in the event of reversal at the end of the case. Compare *Palmer v. Chicago,* 806 F.2d 1316, 1319–20 (7th Cir.1986), with *People Who Care v. Rockford Board of Education,* 921 F.2d 132, 134–35 (7th Cir.1991). The district court ordered the pension fund to distribute the accounts to the drivers. Many of the drivers are itinerant, and recovering the money would be hard even if they could be tracked down. Recall that 16 drivers could not be found or were unwilling to file claims even when informed that they are entitled to sums as large as $1,888. Retrieving the money *from* the drivers some years in the future, after the district judge decides what is to become of the unclaimed accounts, certainly would not repay the costs of collection. (The drivers who made claims have pension accounts as small as $80.51.) *Forgay* therefore supports appellate jurisdiction.

All this means, however, is that Kasper Trucking loses now rather than later. For once again Kasper lacks any equitable claim to the money. To say that the common law action is "equitable" is not to say that all depends on the judge's sympathies. "Equity is no longer granted or withheld according to the chancellor's sensibilities and his regard for the uprightness of the parties. [It] is designed to achieve compliance with established rules, and even the wicked have a

right to treatment according to the rules." *Polk Bros., Inc. v. Forest City Enterprises, Inc.*, 776 F.2d 185, 193 (7th Cir.1985). See also *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1334 (7th Cir.1992).

The district court believed that the drivers prevail because Kasper sent "their money" to the pension fund. When the pension fund volunteered to surrender the accounts, the court held, the money should revert to its "owners." Yet pension contributions cannot readily be classified as "employer's money" and "employees' money." Compensation for work comes ultimately from the value labor adds to the goods or services the employer sells to customers, and it is possible to arrange the compensation package so that the pension is "contributory" (nominally the employees' money) or "noncontributory" (nominally the employer's money); the difference is more important to tax law than to the economic substance of the transaction. See *Howell v. United States*, 775 F.2d 887 (7th Cir.1985). Cf. *Teamsters v. Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (noncontributory pensions are treated as employer's money for purposes of question whether employees are "investing" in a "security"); *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603 (7th Cir.1993) (in banc) (treating entitlement to health benefits as a question of contract rather than "ownership"). Kasper points out that the pension plan was noncontributory—meaning, principally, that the funds sent to the pension plan were not treated as part of the drivers' gross income for tax purposes—and contends that it is entitled to "its" money back.

Formal matters such as "ownership" do not supply a useful way to look at the problem. Attribution of ownership is the *conclusion* of a case such as this rather than a reason to decide the case one way or the other. Tax considerations dominate the structure of the compensation package, while the question in this case is who receives the economic benefit of the funds designated for pension purposes. Kasper and its drivers agreed that Kasper, instead of paying all cash for labor and vehicles, would pay partly in cash and partly in pension contributions. The pension is a form of deferred compensa-tion, received after retirement. An attempt to provide that deferred compensation through the pension fund has failed. There are two other ways to reach the same objective: Kasper may take the money and buy annuities for the benefit of the drivers; or the drivers may take the money and buy their own annuities (or make equivalent investments), using the pension rollover features of the tax law. Federal common law in the shadow of ERISA is indifferent between these possibilities. What decides this case, therefore, is the use Kasper proposes to make of the money: Kasper wants to put the cash in the corporate treasury without funding substitute pension vehicles for the drivers. *That* outcome would be inconsistent with the parties' bargain of cash now and retirement income later. The district court therefore properly awarded the money to the drivers.

■ The welfare fund contends that Kasper's appeal is frivolous and asks for an award of attorneys' fees under Fed.R.App.P. 38. We need not decide whether Kasper's litigation strategy is sanctionable, because this is an appropriate case for an award of legal fees under ERISA itself, in favor of both the pension fund and the welfare fund. Fees are available under 29 U.S.C. § 1451(e) unless the losing party's position was "substantially justified". E.g., *Continental Can Co. v. Truck Drivers Pension Fund*, 921 F.2d 126, 127 (7th Cir.1990). Our opinions articulate different approaches to the definition of "substantial justification", but as we observed in *Tesch v. General Motors Corp.*, 937 F.2d 359, 363 (7th Cir.1991), the distinction is verbal rather than substantive. "It is difficult to imagine a situation in which the application of one model rather than the other would alter our decision concerning the propriety of an award of costs or fees." *Ibid.* Kasper's position in this litigation was not substantially justified. It demanded from the welfare fund money that had already been used to provide insurance; it proposed to take the pension accounts without providing substitute retirement income for the drivers. Neither has a lick of support in ERISA, in federal common law, or in the economics of the transactions. Kasper's arguments in this court, moreover, have imposed needless costs

on its adversaries and the court. Kasper took these appeals without inquiring into the jurisdictional problems, and when we directed the parties to address the jurisdictional question, Kasper responded with a memorandum ignoring jurisdiction and arguing that the accounts still held by the pension fund are not subject to escheat. That shifted to appellees (and the court) the full burden of exploring the subject we ordered Kasper to address.

The judgment of the district court is affirmed. Appellees have 15 days to file statements of the costs and reasonable attorneys' fees incurred in defending the appeals.