NATIONAL TAX CREDIT PARTNERS, L.P., and National Tax Credit, Inc., Plaintiffs–Appellees,

v.

Edward F. HAVLIK, Virgil W. Owings, and United Development Management Company, Defendants–Appellants.

Nos. 93–1297, 93–1817, 93–2727 and 93–2987.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1994.

Decided March 28, 1994.

---

Stephen Novack, Donald A. Tarkington (argued), and James E. Bayles, Novack & Macey, Chicago, IL, for plaintiffs-appellees.

Dan Mathless (argued), John C. Raith, Law Offices of Daniel S. Mathless; Stephen J. Spitz, Mitchell H. Macknin, David J. Seery, Sperling, Slater & Spitz; and Scott N. Schreiber, Much, Shelist, Freed, Denenberg & Ament, Chicago, IL, for defendants-appellants.

Before WOOD, Jr., EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

In order to induce two investors to put up money, the general partners of Victorian Park Associates, a limited partnership formed to build and operate an apartment complex, promised to defray any shortfall in Victorian Park's operating accounts. "[F]rom the date hereof until Rental Achievement, [the general partners] will pay all expenses of operating and maintaining the Apartment Complex to the extent necessary to maintain Break–Even Level." (The capitalized terms were defined by the parties. We use "general partners" to refer to the two partners and a corporation the documents call "the Principal.") But the general partners did not keep their promise. The apartment complex ran substantial deficits, which the general partners did not cover. This led the investors to file this suit seeking an injunction compelling the general partners to pay. In response, the general partners caused the partnership to file a petition in bankruptcy, and they asked the district court to remit the investors to the bankruptcy forum. The district court refused and entered the injunction the investors sought. 1993 WL 7166, 1993 U.S.Dist. Lexis 117 (N.D.Ill.). We must decide whether the investors' action is subject to the automatic stay under 11 U.S.C. § 362.

Appellate jurisdiction is secure. Whether the order is characterized as an injunction appealable under 28 U.S.C. § 1292(a)(1), or an order to pay appealable under *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), because the general partners are unlikely to be able to recover the money, does not matter. *Construction Industry Retirement Fund of Rockford v. Kasper Trucking, Inc.*, 10 F.3d 465, 468 (7th Cir.1993); *Pacific Reinsurance Management Corp. v. Fabe*, 929 F.2d 1215, 1218 (7th Cir. 1991). See also Charles Alan Wright & Arthur R. Miller, 16 *Federal Practice and Procedure* § 3922 at 45–46 (1977).

■ Bankruptcy does not affect third-party guarantees of a debtor's obligations. *In re Hendrix*, 986 F.2d 195 (7th Cir.1993); *In re Shondel*, 950 F.2d 1301 (7th Cir.1991). So if the general partners had undertaken to pay the investors a sum sufficient to prevent their suffering a loss on the investment, this promise would not have been subject to the automatic stay. *Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4th Cir.1988); see *Pitts v. Unarco Industries, Inc.*, 698 F.2d 313, 314–15 (7th Cir.1983). What the general partners promised to do, however, is to provide additional money *to the partnership*, not to pay the investors. The promise appears in a side agreement with the investors, but the partnership is a third-party beneficiary and could enforce the promise directly. This sets up an argument based on § 362(a)(3), which blocks "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". The right to obtain money from the general partners is "property of the estate"; the injunction compelling the general partners to pay this money "exercise[s] control" over this property; thus, the argument concludes, the investors' demand is blocked by the automatic stay.

■ Without discussing the language of § 362(a)(3), the district court distinguished between actions that impose a cost on a debtor in bankruptcy and those that produce a benefit for the estate. Only the former are covered by the stay, the district court believed. Although the judge allowed that entertaining the investors' suit could lead to duplicative litigation—for the bankruptcy court also could enforce the general partners' promise—the judge believed that duplication could be avoided if the debtor intervened in the investors' case. Subsequent developments show that avoiding duplication is easier said than done. After the district court entered its injunction compelling the general partners to "pay all Operating Deficits as calculated pursuant to the worksheet attached as Exhibit A"—an amount to be computed monthly by an accounting firm appointed by the district court—the partnership asked the bankruptcy court to confirm a plan of reorganization. The plan took a different approach to funding the apartment complex's deficits. Instead of making monthly payments under the injunction, the general partners were to make a lump sum payment of $600,000 and to make good any deficit exceeding $7,320 per month. The bankruptcy judge confirmed the plan of reorganization on February 17, 1994. Just in case this were not confusion enough, the bankruptcy judge's order confirming the plan adds a proviso that the plan does not relieve the general partners of their obligation to fund deficits "to the extent such agreements exist and are enforceable." *Are* they enforceable after the confirmation of the plan of reorganization? The bankruptcy judge did not say. Because the confirmation order leaves in limbo the central question on this appeal—and because the plan of reorganization has not been consummated (that event is contingent on the partnership's ability to attract $17 million in new capital)—the appeal is not moot.

■ The district court subordinated the language of § 362(a)(3) to a purpose imputed to that language. Yet statutes—more accurately, the persons who wrote and voted for the statutes—often have multiple purposes. Courts enforce not these purposes in the abstract but the rules embedded in the language, which may track the purposes only imperfectly. *Rodriguez v. United States*, 480 U.S. 522, 525–26, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987); *Board of Governors v. Dimension Financial Corp.*, 474 U.S. 361, 374, 106 S.Ct. 681, 689, 88 L.Ed.2d 691 (1986). Knowing the purpose behind a rule may help a court decode an ambiguous text, *Sundstrand Corp. v. CIR*, 17 F.3d 965, 967 (7th Cir.1994); *Calderon v. Witvoet*, 999 F.2d 1101, 1104 (7th Cir.1993), but first there must be some ambiguity. *Lincoln v. Vigil*, — U.S. —, — – —, 113 S.Ct. 2024, 2031–32, 124 L.Ed.2d 101 (1993); *Puerto Rico Department of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 108 S.Ct. 1350, 99 L.Ed.2d 582 (1988). Subject to the standard proviso about absurd results, when the statute itself resolves the problem at hand that is an end to matters. E.g., *Connecticut National Bank v. Germain*, — U.S. —, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *Board of Governors v. MCorp Financial,*

*Inc.*, — U.S. —, — – —, 112 S.Ct. 459, 463–64, 116 L.Ed.2d 358 (1991); *Rodriguez*, 480 U.S. at 526, 107 S.Ct. at 1393. Most subsections of § 362 are concerned, as the district court concluded, with efforts to obtain money from the estate or to reduce the estate's ability to collect from others. Section 362(a)(3), however, reaches farther, encompassing every effort to "exercise control over property of the estate". The right to collect from the general partners is "property of the estate". See 11 U.S.C. § 541(a)(1) (property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"). That the general partners made their promise to and for the benefit of the investors does not detract from the fact that the promise *also* is "property of the estate". The district judge exercised control over that property. Q.E.D.

This conclusion makes functional as well as formal sense. One of the principal means by which bankruptcy law operates is to concentrate, in a single forum, disputes affecting a debtor's solvency and continuing operations. *Covey v. Commercial National Bank of Peoria*, 960 F.2d 657, 661–62 (7th Cir.1992); *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989); *In re Iowa R.R.*, 840 F.2d 535 (7th Cir.1988); *Boston & Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562 (7th Cir.1986). Aggregation prevents efforts by creditors to pick off or affect the disposition of assets in ways that may be privately beneficial but collectively harmful. The bankruptcy judge then serves as dispatcher, resolving the claims that are conveniently treated together while releasing others for decision in their original forums. 11 U.S.C. § 362(d); 28 U.S.C. § 157(b)(5), (c); *Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir. 1991). How much the general partners owe to the partnership is the kind of question that should be resolved in the bankruptcy— as the plan of reorganization, which addressed precisely this question, demonstrates.

One could imagine a recharacterization of our dispute as a claim *by* the debtor against the general partners, which would be outside the automatic stay. *Martin–Trigona v.*

*Champion Federal Savings*, 892 F.2d 575, 577 (7th Cir.1989); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 140 B.R. 969 (N.D.Ill.1992); James McCafferty, *The Effect of Bankruptcy on the Debtor's Pending Litigation*, 93 Comm.L.J. 214, 218–21 (1987) (citing cases). Yet the paradigmatic claim by the debtor is to enforce a patent or contract right, receiving a payment that does not depend on the course of reorganization. How much the general partners owed to Victorian Park Associates is intimately connected to events within the control of the bankruptcy court. A plan of reorganization could increase or reduce the monthly shortfalls—or, as this plan did, could capitalize some of the obligation, converting periodic payments to a lump sum.

When casting the injunction as an obligation to pay the monthly deficit of a firm in bankruptcy reorganization, the district court conceded the intimate connection to the bankruptcy proceedings. But for the proviso that the bankruptcy judge tacked onto Victorian Park Associates' plan of reorganization, compliance with the plan would have put the general partners in contempt of the district court's injunction. Similarly, compliance with the injunction has the potential to prevent compliance with the plan; the general partners do not have bottomless pockets and may be unable to pay $600,000 on top of covering the monthly deficits in two different ways. (The injunction calls for full funding, the plan of reorganization for funding monthly deficits that exceed $7,320, with some additional provisions for minimum funding obligations.) The potential for such conflicts—a potential realized in this case—shows the virtue of consolidating these disputes in the bankruptcy forum.

Similar disputes routinely come to the bankruptcy court. Enforcement of a promise to pay money to an estate in bankruptcy, and measured by the operating deficits of that estate, has much in common with corporate derivative litigation, which, we held in *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1348–49 (7th Cir.1987), is covered by the automatic stay. Similarly, the right to recoup a fraudulent conveyance, which outside of bankruptcy may

be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way.

We appreciate why the investors preferred to bypass the bankruptcy proceedings. Victorian Park Associates operated the apartment complex as a debtor in possession, which is to say that the general partners retained control. Doubtless the investors feared that the general partners would be less than enthusiastic about pursuing themselves for more money. The right response, however, was not independent litigation but a request that the bankruptcy court enforce the general partners' agreement. If the debtor in possession opposed the request, the investors could have petitioned for the appointment of a trustee. The investors never asked the bankruptcy court to appoint a trustee. Similarly they could have asked the bankruptcy judge to modify the automatic stay to permit litigation in the district court. 11 U.S.C. § 362(d). They did not make this request. Finally, they could have asked the district judge to withdraw the reference to the bankruptcy court and adjudicate part or all of the claim himself. 28 U.S.C. § 157(d). (The bankruptcy case, like the contract case, is in the Northern District of Illinois.) This would have preserved for the investors whatever benefits they perceived in adjudication by a district judge, while avoiding any possibility of conflict among tribunals. Once again, however, the investors never asked. They were content to have simultaneous and overlapping proceedings before the district and bankruptcy courts. Representing the interests of the judicial system as a whole, we are not at all content with duplicative, and potentially conflicting, proceedings.

One last issue and we are done. Usually subject-matter jurisdiction is the first order of business, and the general partners deny that the district court even had jurisdiction. The investors do not rely on diversity of citizenship. Instead they invoked the federal securities laws, contending that the general partners committed securities fraud, and asked the district judge to adjudicate the contract claim under the supplemental jurisdiction. 28 U.S.C. § 1367. This poses at least two difficult questions: first, are the limited partnership interests the investors purchased "securities"? (these interests carry substantially more control than normal investment units, and the degree of control is potentially important under *Marine Bank v. Weaver*, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982)); second, is this an appropriate occasion for the exercise of supplemental jurisdiction, given the availability of the bankruptcy forum? It is the very availability of the bankruptcy forum, however, that persuades us that there is jurisdiction— not under § 1367 but under 28 U.S.C. § 157(c). For the reasons we have canvassed in concluding that enforcement of the partners' promise belongs in the bankruptcy court, this controversy is "related to a case under chapter 11" and so comes within federal jurisdiction. Section 157(c) authorizes a federal court to resolve a dispute that "affects the amount of property available for distribution [to creditors] or the allocation of property among creditors." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). This case is all about how much money will come into the debtor's coffers. Whether the district court has jurisdiction over the securities claims, which remain pending, is a question for another day, when the details of that controversy come into focus.

REVERSED.