BANK BRUSSELS LAMBERT, Swiss Bank Corporation, Banque Indosuez and Skopbank, Plaintiffs,

v.

CREDIT LYONNAIS (SUISSE) S.A. and Roy William Harris, Defendants,

v.

The CHASE MANHATTAN BANK, N.A., Ernst & Young and Rogers & Wells, Third–Party Defendants.

No. 93 Civ. 6876 (LMM).

United States District Court, S.D. New York.

Jan. 30, 1996.

Robert L. Weigel, Gibson Dunn & Crutcher, New York City, for Bank Brussels Lambert and Skopbank.

Robert L. Weigel, Gibson Dunn & Crutcher, New York City, William F. Duker, Ducker & Barrett, New York City, and David Boies, Cravath, Swaine & Moore, New York City, for Swiss Bank Corp. and Banque Indosuez.

Donald F. Luke, Rogers & Wells, New York City, and Helen Davis Chaitman, Ross & Hardies, New York City, for Credit Lyonnais (Suisse) S.A.

John A. Borek, Fried Frank Harris Shriver & Jacobson, New York City, and John F. Zulack, Flemming, Zulack & Williamson, L.L.P., New York City, for Banque Paribas (Suisse) S.A.

William J. Schwartz, Kronish, Lieb, Weiner & Hellman, L.L.P., New York City, for Stephen R. Carley, Edith N. Dineen, Jonathan M. Herman, John A. Karaczynski, Thomas J. McDermott, A. Richard Metzger, Jr., Jack S. Older, James V. Ryan, Ellen Taylor and Harry M. Yohalem.

### *MEMORANDUM AND ORDER*

McKENNA, District Judge.

#### 1.

Defendant Credit Lyonnais (Suisse) S.A. ("Credit Lyonnais") moves to dismiss the Second Amended Complaint on two grounds: (1) that the claims asserted in that complaint are barred by the automatic stay provisions

of 11 U.S.C. § 362; and (2) that the Court does not have *in personam* jurisdiction over Credit Lyonnais.

**2.**

According to the Second Amended Complaint, plaintiffs (and Chase Manhattan Bank N.A. ("Chase")) entered into a revolving credit agreement (the "RCA") with AroChem Corporation and AroChem International, Inc. (¶ 18.) "As security for the RCA, [plaintiffs and Chase] perfected a security interest in the . . . assets [of AroChem Corporation and AroChem International, Inc.], including accounts receivable and the proceeds thereof." (¶ 19.) Credit Lyonnais entered into a lending relationship with AroChem International Ltd., a company related to AroChem Corporation and AroChem International, Inc. (¶ 29.) Accounts receivable of AroChem Corporation and AroChem International, Inc., plaintiffs allege, were diverted to AroChem International Ltd. and Credit Lyonnais. (¶ 34.)

Plaintiffs assert six claims: (1) against Credit Lyonnais, for conversion of the accounts receivable of AroChem Corporation and AroChem International, Inc.; (2) against Credit Lyonnais and defendant Harris, for aiding and abetting conversion and conspiracy to commit conversion; (3) against Credit Lyonnais and defendant Harris for fraud, aiding and abetting fraud and conspiracy to commit fraud; (4) (5) and (6) against Credit Lyonnais and defendant Harris under the Racketeer Influenced and Corrupt Organizations Act ("RICO").[1]

Plaintiffs seek damages in the sum of $123,036,638.93, the amount of the accounts receivable of AroChem Corporation and AroChem International, Inc. alleged to have been diverted to AroChem International Ltd. and Credit Lyonnais, trebled in the case of

the RICO claims, as well as punitive damages on the third, fraud, claim. (Second Amended Complaint, ¶¶ 899–907.)

On February 14, 1992, AroChem Corporation and AroChem International, Inc. (hereinafter collectively "Debtors") filed petitions under Chapter 11 of the Bankruptcy Code in the District of Connecticut; the cases were subsequently converted to Chapter 7 cases. In 1994, the Debtors' Trustee commenced an adversary proceeding against Chase, plaintiffs, Harris and one Eric C. Johnson, seeking, together with other relief, to avoid the security interest in the Debtors' accounts receivable granted to plaintiffs and Chase, and to have it "preserved for the benefit of the bankruptcy estates pursuant to 11 U.S.C. § 551." (Trustee's Complaint, ¶ 45.)[2] Plaintiffs did not obtain or seek an order lifting the stay prior to commencing the present action.

**3.**

Plaintiffs argue, first, that Credit Lyonnais does not have standing to raise the automatic stay provisions of 11 U.S.C. § 362. The Court disagrees. Plaintiffs have not cited any provision of the Bankruptcy Code or binding precedent to support that position, and 11 U.S.C. § 362(h), by its terms, suggests that parties other than a debtor or a trustee may have a right to assert the stay. *See also National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705 (7th Cir.1994) (Easterbrook, J.), where, although the issue of standing to assert the stay was not discussed, the court considered the bar of 11 U.S.C. § 362 asserted by general partners of a bankrupt partnership, not by the bankrupt partnership itself. 20 F.3d at 706.

**4.**

As a general proposition, "[t]he automatic stay does not apply to actions against

---

1. The fourth, fifth and sixth claims allege the violation, respectively, of 18 U.S.C. § 1962(c), 18 U.S.C. § 1962(b), and 18 U.S.C. § 1962(a).

2. A copy of the complaint in the adversary proceeding is annexed as Exhibit A to the August 31, 1995 affidavit of Helen Chaitman. The Trustee has also commenced an action in the District Court of Harris County, Texas. (*Id.*, Exhibit C.) Among the defendants in that action are plaintiffs, Chase and Credit Lyonnais. Credit Lyonnais refers to this action as one in which the

Trustee "has alleged that the Plaintiffs' liens are invalid" (Credit Lyonnais Mem. at 7), without, however identifying what portions of the 62–page complaint those allegations are to be found in. The *ad damnum* clause of the complaint does not seek such relief. In any event, if Credit Lyonnais' assertion is correct, the portion of the Texas action which seeks to invalidate plaintiffs' liens would, for present purposes, add nothing to the pendency of the adversary proceeding.

third parties or property of third parties." Douglas G. Baird, *The Elements of Bankruptcy* 190 (1992), (footnote omitted). Here, where plaintiffs seek only damages from third parties, and no relief against Debtors' estates, that general proposition would seem obviously applicable.

Credit Lyonnais argues, however, that this case is different because it arises out of the alleged appropriation of Debtors' account receivable, so that plaintiffs' claims should be characterized as an "act to obtain possession of property of the estate," 11 U.S.C. § 362(a)(3), or an "act to . . . enforce any lien against property of the estate," 11 U.S.C. § 362(a)(4), or an "act to . . . enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case," 11 U.S.C. § 362(a)(5), or an "act to collect . . . a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). (Credit Lyonnais Mem. at 3–4.)

■ Considering first plaintiffs' third through sixth claims, alleging fraud and violations of RICO, it is clear that plaintiffs have the right to pursue those claims for damages notwithstanding Debtors' bankruptcy. *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986) (fraud); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1100–01 (2d Cir. 1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989) (RICO). As in those cases, plaintiffs here seek, by their third through sixth claims, recovery from defendants of damages allegedly caused by defendants' conduct.

■ Plaintiffs' first and second claims, alleging conversion, present a more complex question. In part this is because of the nature of a claim for conversion:

> The rule is clear that, to establish a cause of action in conversion, the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights. Tangible personal property or *specific money* must be involved.

*Independence Discount Corp. v. Bressner,* 47 A.D.2d 756, 365 N.Y.S.2d 44, 46 (2d Dep't 1975) (citations omitted). A claim for conversion thus focuses on appropriation of specific funds.[3]

Here, those funds are specific accounts receivable of Debtors. The receivables, however, are not now in the possession of the obligors, or of Debtors' Trustee. According to the Second Amended Complaint, instead of being paid to plaintiffs and Chase, who had a perfected security interest in them, they were converted, prepetition, by Credit Lyonnais, and applied to reduce the obligations of AroChem International Ltd. to Credit Lyonnais.

As noted above, Debtors' Trustee is seeking to avoid the security interest of plaintiffs and Chase, and to have that security interest preserved for the benefit of the bankruptcy estates pursuant to 11 U.S.C. § 551.

The available case law indicates that, in the circumstances of the present case, the automatic stay of 11 U.S.C. § 362 does not bar prosecution by plaintiffs of their conversion claims.

In *In re Colonial Realty Co.,* 980 F.2d 125 (2d Cir.1992), the Court of Appeals concluded that a fraudulent conveyance action brought against the wife of a bankrupt general partner of a bankrupt general partnership and a corporation, as transferees of the fraudulent conveyance, was subject to the automatic stay in that the action was brought "to recover a claim against the debtor," 11 U.S.C. § 362(a)(1), but that the action was not an "act to obtain possession of property of the estate." 11 U.S.C. § 362(a)(3). 980 F.2d at 132. The Court's reasoning in finding that 11 U.S.C. § 362(a)(3) did not apply is instructive here.

---

**3.** *Usually, however, recovery on a conversion claim will be an amount equal to the full value of the converted property, rather than return of the* specific property. William L. Prosser & W. Page Keeton, *The Law of Torts* (5th ed. 1984), at 106.

The Court noted that the property of a bankruptcy estate includes "[a]ny interest in property that the trustee recovers," 11 U.S.C. § 541(a)(3), under various Bankruptcy Code provisions including 11 U.S.C. § 550, which allows a trustee to recover transferred property for the benefit of the estate to the extent that the transfer is voided as fraudulent under 11 U.S.C. § 544 or § 548. *Colonial Realty*, 980 F.2d at 131. The Court then quoted *In re Saunders*, 101 B.R. 303, 305 (Bankr.N.D.Fla.1989):

As stated in *Saunders:* "If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions." 101 B.R. at 305. Further, "the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered." *Id.*

*Colonial Realty*, 980 F.2d at 131.

The Court's reasoning applies to the parallel situation in the present case. A bankruptcy estate includes "[a]ny interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of [the Bankruptcy Code]." 11 U.S.C. § 541(a)(4). Here, Debtors' Trustee is seeking by his adversary proceeding described above to avoid, and preserve for the benefit of Debtors' estate pursuant to 11 U.S.C. § 551, the security interest of plaintiffs and Chase in the accounts receivable at issue. Just as in *Colonial Realty*, so here, the inclusion of property preserved by the Trustee's avoidance powers in a separate definitional subparagraph (11 U.S.C. § 541(a)(4)) "clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered." 980 F.2d at 131 (quoting *Saunders,* 101 B.R. at 305).

The consequence of applying the reasoning of the *Colonial Realty* Court (relying on *Saunders* ) is that the accounts receivable cannot, at this time, be considered property of Debtors' estate, and that 11 U.S.C. § 362(a)(3) does not apply. And, since the receivables are not to be considered property of the estate, 11 U.S.C. §§ 362(a)(4) and (5) do not apply either, prohibiting, as they do, the creation, perfection or enforcement of liens against property of the estate or debtor.

Credit Lyonnais also urges that 11 U.S.C. § 362(a)(6) bars the prosecution of plaintiffs' claims. That subsection subjects to the automatic stay "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code]." Here, *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098 (2d Cir.1990), is helpful.

In *Crysen*, Crysen (the debtor) purchased oil from Esselen for resale to Con Edison, the purchased oil being delivered by Esselen directly to Con Edison. On a particular delivery, as a result of a discrepancy in measurement of the oil, Con Edison paid Crysen, and Crysen in turn paid Esselen, for substantially less oil than Esselen claimed was delivered. After Esselen's action against Crysen for the claimed balance due was voluntarily dismissed upon Crysen's filing of a petition for reorganization under the Bankruptcy Code and the consequent operation of the automatic stay, Esselen brought an action against Con Edison for conversion or misappropriation of the oil Esselen claimed, but Con Edison denied, had been delivered. Crysen then brought an adversary proceeding against Con Edison seeking payment by Con Edison of the balance due, and, "claiming that the right to recover from Con Edison was property of its estate," 902 F.2d at 1100, succeeded in the Bankruptcy Court in enjoining Esselen from pursuing its action. The District Court reversed the Bankruptcy Court but was reversed by the Court of Appeals.

The Court of Appeals identified the issue as "whether [Esselen's] cause of action is the exclusive property of Crysen's bankruptcy estate." 902 F.2d at 1101. After recognizing that "[w]ithin [the] definition of a debtor's property fall the debtor's rights of action to collect accounts receivable," *id.*, the Court also pointed out that

[a]lthough federal bankruptcy law determines the outer boundary of what may constitute property of the estate, state law determines the "nature of a debtor's interest" in a given item. Therefore, whereas federal law instructs us that the action for the missing oil *may* constitute property of Crysen's estate, state law determines whether Crysen's interest in the cause of action is sufficient to confer on the estate a property right in the action.

*Id.* (quoting *In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d Cir.1989)). Analyzing the respective rights of Esselen and Crysen in the missing oil under N.Y.U.C.C. Law ("UCC") § 2–722 (McKinney 1995), the Court concluded that

> if Esselen has either title, a security interest, an insurable interest, or risk of loss with regard to the allegedly missing oil, the tort action against Con Edison is not the exclusive property of Crysen's estate, and the automatic stay does not bar Esselen from prosecuting its ... action against Con Edison.

*Id.* The Court found that Esselen did not have title, a security or insurable interest, or risk of loss, so that the tort action was the exclusive property of Crysen's estate, and the tort action was barred by the automatic stay.

The reason that Esselen did not have a security interest in the oil, the Court said, was that

> [c]reation of a security interest in goods requires explicit conformity with the applicable provisions of Article 9 of the UCC. Because no explicit agreement designating Esselen as a security holder in the goods was executed, Esselen may not now claim to retain such an interest in the delivered goods.

*Id.* at 1102 (citation omitted).[4]

Here, however, plaintiffs allege an explicit and perfected agreement under which they have a security interest in Debtors' receivables. Under the reasoning of *Crysen,* therefore, the claim for conversion of the

Debtors' accounts receivable (if plaintiffs prove their security interest) is not the exclusive property of Debtors' estate, and plaintiffs are thus not precluded by 11 U.S.C. § 362(a)(6) from pursuing that claim.

■ Credit Lyonnais also suggests, as a reason to apply the automatic stay to bar the prosecution of plaintiffs' conversion claims, "the risk which a non-bankruptcy action would pose to the defendant of incurring liability both to the debtor and to the plaintiff creditor." (Credit Lyonnais Reply Mem. at 10 (citing *Crysen,* 902 F.2d at 1103–04)). This argument is not persuasive.

The cited portion of *Crysen* is not addressed to the issue of the effect of the possession by Esselen or not of a security interest in the oil. It begins: "Even if Esselen has no security interest, insurable interest, title, or risk of loss in the goods, section 2–722(a) allows Esselen to bring a tort action against Con Edison if it can establish that it 'has since the injury assumed that risk [of loss] as against the other.'" 902 F.2d at 1103 (brackets in original). The Court then found that Esselen had "not assumed the risk of loss since the injury," *id.* (citations omitted), and concluded that

> [b]ecause Esselen does not have title, an insurable interest, a security interest, or legal *or* assumed risk of loss with respect to the missing oil, we hold that Esselen may not press a tort claim against Con Edison and that the tort action is the exclusive property of Crysen's bankruptcy estate.

*Id.* (emphasis added). It was in this context that the Court next considered the problem of subjecting Con Edison to suit twice for the same occurrence, prefacing its discussion of that issue by saying that "[h]owever, even if Esselen had released its claim against Crysen and 'assumed' the risk of loss since the injury pursuant to UCC section 2–722, we think that Esselen would still be barred from prosecuting this action against Con Edison." *Id.* at 1103–04. This Court accordingly un-

---

4. Thus, the *Crysen* decision does not, as Credit Lyonnais suggests, turn entirely on UCC § 2–722. (*Cf.* Credit Lyonnais Reply Mem. at 10.) The clear implication of *Crysen* is that if Esselen

had an explicit agreement satisfying UCC Article 9, it would have been allowed to pursue its conversion claim.

derstands the immediately following paragraph of *Crysen* ("In this connection ...," *id.* at 1104) not to relate to the situation that would have obtained had Esselen been found to have had a security interest in the oil.

Further, Credit Lyonnais does not explain how allowing plaintiffs to pursue their conversion claims in this Court, notwithstanding the Trustee's pending adversary proceeding, will expose it to potential double liability. Should the Trustee's claim be adjudicated first, the problem does not appear to arise: either the Trustee will succeed, in which case, since plaintiffs (and Chase) are parties to the Trustee's adversary proceeding, a judgment in his favor in the adversary proceeding will, presumably, be binding on plaintiffs here and defeat their conversion claims in the present case; or the Trustee will not succeed, in which case plaintiffs success in the present case will not result in double liability on the part of Credit Lyonnais to both plaintiffs and the Trustee.

Should the present action be adjudicated first, and should plaintiffs fail on their conversion claims, then, once more, the double liability problem does not arise. That problem could arguably arise, however, in the event that, prior to adjudication of the Trustee's adversary proceeding, plaintiffs succeed in their conversion claims in the present case. Such a situation, however, is not new to claims for conversion, which are often premised on a right to possession, rather than ownership, of the thing converted (so that, as here, the potentially conflicting claims may turn on different sets of facts occurring at different times). *See* William L. Prosser & W. Page Keeton, *The Law of Torts* (5th ed. 1984), at 103–4. Should the situation arise in which plaintiffs are found to have established their conversion claims while the Trustee's claim that plaintiffs' (and Chase's) claimed

security interest is to be preserved for the benefit of the Debtors' estates remains undetermined, this Court could, among other things, stay proceedings before it pending resolution of the Trustee's claim in this Court (should the Trustee intervene), or in the Trustee's adversary proceeding. *See id.* at 104. Any recovered proceeds under this Court's judgment might possibly be retained by the Court pending such a resolution. The present situation, in short, does not pose an unmanageable risk of Credit Lyonnais having to satisfy two judgments relating to the same accounts receivable.

For the foregoing reasons, Credit Lyonnais' motion to dismiss based on 11 U.S.C. § 362 is denied.

**5.**

Credit Lyonnais' motion to dismiss for lack of *in personam* jurisdiction is also denied.

■ "[O]n a motion to dismiss, plaintiff is only obligated to allege facts sufficient to establish a prima facie showing of jurisdiction." *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 86 (S.D.N.Y. 1995) (citation omitted).

■ In the present case, subject matter jurisdiction is premised on plaintiffs' RICO claims, 28 U.S.C. § 1331, and supplemental jurisdiction, *id.* § 1367, over the conversion and fraud claims.[5] In a federal question case, Fed.R.Civ.P. 4(k)(2) "provides ... personal jurisdiction over a foreign defendant ... if the foreign defendant has sufficient contacts with the United States to satisfy due process requirements." *Eskofot*, 872 F.Supp. at 87.[6]

■ Among the factors that will satisfy the minimum contacts test is "doing an act in the United States." *Id.* That test is satisfied by plaintiffs' allegations that the

---

5. Since the plaintiffs and Credit Lyonnais are aliens, diversity jurisdiction is not available. *Lloyds Bank PLC v. Norkin*, 817 F.Supp. 414, 417 (S.D.N.Y.1993).

6. Rule 4(k)(2) became effective December 1, 1993, and was to "govern all proceedings in civil case thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." *Id.* at 86 (quoting Orders of the

Supreme Court of the United States Adopting and Amending Rules, U.S. Order 93–17 (Apr. 22, 1993)). This action was commenced prior to December 1, 1993, but Credit Lyonnais was served thereafter, in January of 1994 (see Plaintiffs' Mem. at 16 n. 16), although pursuant to an order entered prior to December 1, 1993. Credit Lyonnais has not argued that it is not "just and practicable" to apply the Rule, and the Court finds that it is. *See Eskofot*, 872 F.Supp. at 86–87 & nn. 6 & 7.

proceeds of accounts receivable, on instructions from Credit Lyonnais, passed through Credit Lyonnais' New York clearing account. (Second Amended Complaint, ¶¶ 58, 134–155.) *Cf. United States v. Gilboe*, 684 F.2d 235, 238 (2d Cir.1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983). It is also alleged (Second Amended Complaint, ¶¶ 134–155) that Credit Lyonnais sent numerous wire communications in furtherance of a scheme to defraud, many of them, at least, into the United States, acts also satisfying the minimum contacts test. *Cf. Herbstein v. Bruetman*, 768 F.Supp. 79, 81–2 (S.D.N.Y.1991). These acts moreover, clearly relate to the RICO (and other) claims asserted by plaintiffs.

Plaintiffs' state law claims derive from a nucleus of operative fact common to the RICO claims. In such a case, "the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). Accordingly, Credit Lyonnais' arguments to the effect that this Court does not have *in personam* jurisdiction over it, under New York law, as to plaintiffs' state law claims need not be considered.

### 6.

Credit Lyonnais also argues that this action should be dismissed because, under Swiss law, any judgment recovered by plaintiffs against it will not be enforced in Switzerland. That may or may not be the case, but Credit Lyonnais has not cited any domestic authority to the effect that that is a basis for dismissal. It may be merely a risk which plaintiffs must assume.

### 7.

For the foregoing reasons, Credit Lyonnais' motion to dismiss, as based on 11 U.S.C. § 362 or on lack of *in personam* jurisdiction, is denied.

SO ORDERED.