**CAREMARK HOMECARE, INC., formerly known as Home Health Care of America, Inc., Plaintiff,**

v.

**NEW ENGLAND CRITICAL CARE, INC., Harlan Langstraat, Eugene Miller, Kevin Burns, Janet Wilson, Nancy Pearson, and Kathleen Garvey, Defendants.**

No. Civ. 3–88–620.

United States District Court,
D. Minnesota,
Third Division.

Dec. 13, 1988.

**1034**

Robert DeVos, Janie S. Mayeron, Popham, Haik, Schnobrich & Kaufman Ltd., Minneapolis, Minn., for plaintiff.

Stephen J. Snyder, William Mohrman, Winthrop & Weinstine, St. Paul, Minn., for defendants.

## ORDER

DEVITT, District Judge.

The plaintiff has moved for dismissal of several of the defendant's counterclaims. Based upon the submitted memoranda, oral argument of counsel and all records, files and proceedings herein, the court finds that the counterclaims set forth in paragraphs 4 through 26 of the defendants' Answer and Counterclaims fail to state a claim upon which relief may be granted.

### Background

This action involves an employment dispute between two companies which provide home health care services as well as a number of individuals who are current employees of defendant and who were formerly employed by plaintiff. Caremark required all employees, including the individual defendants, to sign confidentiality agreements and covenants not to compete. The individual defendants have left or were discharged from Caremark's employ and now are employed by New England Critical Care. Caremark initiated this action against defendants alleging breach of the confidentiality and noncompete agreements as well as other claims.

Defendants filed a counterclaim alleging that the requirement of employee noncompete agreements and the merger of Baxter–Travenol Laboratories, Inc., into Caremark violated the antitrust provisions of the Sherman Act and state antitrust laws. These counterclaims are the subject of the instant motion to dismiss.

### Discussion

In their counterclaims, defendants allege violation by plaintiff of sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1 et seq., and violation of Minn.Stat. §§ 325D.49–325D.66. Plaintiff seeks dismissal of these claims with prejudice alleging that the pleadings are incurably defective.

While the use of summary proceedings to dispose of antitrust claims is generally disfavored, a claim of antitrust violations must be supported by facts:

> Thus, in the context of a 12(b)(6) challenge, the question is whether ... the plaintiffs have successfully pleaded a contract, combination, or conspiracy in restraint of trade within the meaning of the Sherman Act. The pleader may not evade these requirements by merely alleging a bare legal conclusion.... When the requisite elements are lacking, the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.

*Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101 (7th Cir.1984). Each of defendants' Sherman Act counterclaims must be

examined in this light to determine whether all the necessary elements are pleaded and whether facts are alleged in support of these elements.

## A. Section 1 Claims

[1] Defendants claim a violation of section 1 of the Sherman Act which provides:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal.

15 U.S.C. § 1. To state a claim under this section, defendants must allege: 1) illegal activity on the part of plaintiff which is in or affects interstate commerce; 2) activity performed by two or more persons or entities; 3) an agreement or concerted action; 4) action in restraint of trade or commerce; and 5) restraint which is unreasonable. See 2 E. Kintner, *Federal Antitrust Law*, § 9.1 at 5 (1980). Defendants' counterclaim does not sufficiently allege all of these elements.

Some allegation of ultimate facts showing a restraint on interstate commerce is required and the absence of such allegations justifies dismissal. *Bryan v. Stillwater Board of Realtors*, 578 F.2d 1319 (10th Cir.1977). The only allegation made by defendants of an effect on interstate commerce is as follows: "By requiring all its employees to sign 'Covenant Not to Compete and to Maintain Confidentiality of Proprietary Information Agreements' which were overboard in terms of time and geographic scope and selectively enforcing these agreements through litigation, plaintiff Caremark has unreasonably restrained trade in interstate commerce." Counterclaim at para. 14. No facts are alleged which support the conclusion that trade in interstate commerce is restrained and that such restraint is unreasonable.

■ Defendants must also show a concerted action or a conspiracy to restrain trade. Such a conspiracy is not possible as a matter of law between a corporation and its employees unless those employees have an independent personal stake and stand to benefit from conspiring to restrain trade.

*Morton Bldgs. of Nebraska Inc. v. Morton Bldgs., Inc.*, 531 F.2d 910 (8th Cir.1976); *Motive Parts Warehouse v. Facet Enterprises*, 774 F.2d 380 (10th Cir.1985). Thus, the alleged fact that Caremark required its employees to sign covenants not to compete does not constitute a conspiracy under section 1 of the Sherman Act. Defendants' counterclaim also alleges that a merger between Caremark and another company, Baxter–Travenol Laboratories, Inc., has resulted in Caremark's dominance in the home infusion therapy market but does not allege that this merger agreement constituted a conspiracy to unreasonably restrain trade. Thus, the element of a conspiracy has not been properly pleaded.

Finally, defendants have not properly alleged an unreasonable restraint of trade. In considering whether any restraint of trade is unreasonable, the primary considerations are whether the intent of the restraint is anticompetitive and whether it has significant anticompetitive effects. *Rosebrough Monument Co. v. Memorial Park Cemetery Association*, 666 F.2d 1130, 1138 (8th Cir.1981), *cert. denied*, 457 U.S. 1111, 102 S.Ct. 2915, 73 L.Ed.2d 1321 (1982).

■ Defendants allege two restraints on trade, the Caremark covenants not to compete and the merger with Baxter–Travenol. New England Critical Care has alleged no facts which support its allegation that the merger and the covenants have caused it any injury. For example, New England has not alleged that as a result of the merger it has been excluded from the relevant market or that the covenants were intended to and have restricted its participation in the market by making it impossible or difficult to hire qualified employees. Indeed, defendants' allegations and pleadings suggest the opposite because New England contends that the market share held by Caremark is 60% nationally when prior to the merger Caremark had a 30% share and Baxter–Travenol had a 30% share. Similarly, New England asserts that the procedures followed in the home infusion therapy business are well known

and not unusual, suggesting that the pool from which labor can be obtained is large.

The individual defendants have also failed to allege any facts in support of their claim that Caremark's actions have damaged their position in the relevant market. Furthermore, neither New England nor the individual defendants have alleged that Caremark's actions have had an anticompetitive effect on the market as a whole. Such an allegation is required to state a claim under the Sherman Act. *Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 488 (8th Cir.1985); *Bichan v. Chemetron Corp.*, 681 F.2d 514, 517 (7th Cir.1982).

### B. Section 2 Claim

Defendants also allege a violation of section 2 of the Sherman Act which provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony ...

15 U.S.C. § 2. In order to state a claim under this section, defendants must allege: 1) possession of monopoly power by plaintiff and 2) the willful acquisition or maintenance of that power. *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Monopoly power is defined as the power to control prices or exclude competition. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). Proof that an entity has monopoly power requires definition of the relevant market in terms of both the geographic market and the market for the particular product or service involved. Thus, in alleging that monopolization and a violation of section 2 has occurred, defendants must make allegations regarding the relevant geographic and product market. *McElhenney Co. v. Western Auto Supply*, 167 F.Supp. 949, 956 (W.D.S.C.1958), aff'd. 269 F.2d 332 (4th Cir.1959). Cf. *United States v. Empire Gas Corp.*, 537 F.2d 296 (8th Cir.1976); *Morton Bldgs. of Nebraska v.*

*Morton Bldg., Inc.*, 531 F.2d 910 (8th Cir. 1976).

The only factual allegations in the counterclaim which support the conclusion that Caremark has monopolized the home infusion therapy market are defendants' claim that after the merger with Baxter–Travenol, Caremark occupies 60% of the national private home infusion therapy market and 80% of the private home infusion therapy market in the Minneapolis/St. Paul area. No attempt is made to identify the relevant geographic market. Furthermore, there is no assertion or factual support for an assertion that the relevant service market is private home infusion therapy. Defendants' brief concedes that substitute services exist for the provision of intravenous substances. Absent definition of the relevant geographic and product (service) market and factual allegations supporting these definitions, defendants have failed to adequately allege exercise of monopoly power by Caremark. Thus, the counterclaim fails to state a claim under section 2 of the Sherman Act upon which relief may be granted.

### C. State Antitrust Claims

The state antitrust claims are subject to the same objections as the federal and should be dismissed as well. *Midwest Communications, Inc. v. Minnesota Twins, Inc.*, 779 F.2d 444, 454 (8th Cir. 1985).

Accordingly, IT IS ORDERED THAT defendants' counterclaims set forth in paragraphs 4 through 26 of the Answer and Counterclaim be dismissed. The defects in defendants' allegations of Sherman Act violations and state antitrust violations are not superficial errors in pleading but are fundamental inadequacies in their claim, thus, they are ordered dismissed without leave to amend.

LET JUDGMENT BE ENTERED ACCORDINGLY.