ESKOFOT A/S, Plaintiff,

v.

**E.I. DU PONT DE NEMOURS & COMPANY, and Du Pont (U.K.) Limited, Defendants.**

No. 93 Civ. 6237 (PKL).

United States District Court, S.D. New York.

Jan. 6, 1995.

Simpson Thacher & Bartlett, New York City (Charles E. Koob, James G. Kreissman, Louis M. Haber, Brian M. Reilly, of counsel), for plaintiff.

Townley & Updike, New York City (John Paul Reiner, of counsel), for defendants.

### OPINION AND ORDER

LEISURE, District Judge:

This is an action brought by Eskofot A/S ("Eskofot") against E.I. Du Pont De Nemours & Company ("Du Pont") and Du Pont (U.K.) Limited ("Du Pont U.K."). Eskofot alleges that defendants have monopolized the domestic and international market for certain printing equipment and materials. Memorandum of Plaintiff Eskofot A/S in Opposition to Defendants' Motion to Dismiss the Complaint, Stay This Action, Transfer This Action, and Strike Portions of the Complaint ("Plaintiff Mem.") at 2. It further alleges that defendants have engaged and continue to engage in systematic, intentional conduct which restrains trade. Defendants now move this Court (a) to dismiss the action for lack of subject matter jurisdiction, pursuant to Fed.R. of Civ.P. 12(b)(1); (b) to dismiss the claims against Du Pont U.K. for lack of personal jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(2), and to dismiss the action due to plaintiff's consequent inability to join an indispensable party, pursuant to Fed. R.Civ.P. 12(b)(7) and 19; (c) to dismiss or stay the action on grounds of international comity; (d) to dismiss plaintiff's claims under Section One of the Sherman Act, 15 U.S.C. § 1, for failure to state a claim upon which relief can be granted, pursuant to Fed. R.Civ.P. 12(b)(6); (e) to strike certain paragraphs of the complaint, pursuant to Fed. R.Civ.P. 12(f) and Rule 408 of the Federal Rules of Evidence ("Fed.R.Evid."); and to transfer the action to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, defendants' motions are denied.

### BACKGROUND

Eskofot is a large producer of equipment for the graphic arts and printing industry, and is based in Denmark. Plaintiff Mem. at 8. It has average annual sales of approximately $75 million, $12 million of which is derived from sales in the United States. *Id.* Du Pont U.K. is an English corporation, and has a printing and graphic arts division in Leeds, England. Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Defendant Mem.") at 2; Plaintiff Mem. at 9. Its total sales in 1992 were in excess of 700,000,000 British Pounds, and of that amount, 50,000,000 resulted from sales outside of Britain. Plaintiff Mem. at 9. Howson–Algraphy Division of Vickers PLC ("Howson"), is the indirect predecessor of Du Pont U.K. Finally, Du Pont is one of the largest companies in the world, with hundreds of subsidiaries and annual sales of approximately $40 billion. Plaintiff Mem. at 8. Du Pont's corporate headquarters is in Wilmington, Delaware. *Id.*

Eskofot and Howson began work on a new printing system in 1987, and formalized their

relationship with the execution of a written agreement on November 3, 1987. Plaintiff Mem. at 9. Defendants allege that the genesis of this dispute was a further contract executed in England in 1989, between Howson and Eskofot. Defendant Mem. at 7. Defendants state that, in that contract, Eskofot agreed to supply Howson with automatic cameras for use in the development of a direct-to-plate silver halide metal platemaking system (the "System")[1]. *Id.* In May 1989, Vickers PLC sold Howson to Du Pont, and its name was changed to Du–Pont–Howson Limited ("DPH"). DPH accepted the assignment of Eskofot's contract, and DPH executed two additional agreements with Eskofot relating to materials for the development of platemaking systems. *Id.* The first agreement was for the purchase of manual cameras, and the second (the "consumable agreement"), for the supply of certain components of the relevant platemaking systems.[2] *Id.*

In 1992, Du Pont U.K. acquired DPH, and in June 1992, Du Pont U.K. notified Eskofot that it wanted to cancel the agreements. *Id.* at 8. Eskofot alleges that Du Pont retained full control of Silverlith plates, processors and chemicals,[3] and that defendants intensified their worldwide sales and marketing efforts for Silverlith. Plaintiff Mem. at 12. In April 1993, plaintiff instituted an action against Du Pont U.K. in England (the "English action") for breach of the consumables agreement and for damages stemming from Du Pont's alleged abuse of its dominant market position, pursuant to Article 86 of the Treaty of Rome. *Id.* Four months after bringing the English action, plaintiff instituted the instant action.

## DISCUSSION

### A. *Subject Matter Jurisdiction*

■■■ It is well established that, in considering defendants' motion to dismiss for want of subject matter jurisdiction, the Court must accept as true all material factual allegations in the complaint. *See, e.g., Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). It is also well established, however, that the Court should not draw argumentative inferences favorable to the party asserting jurisdiction. *Id.* The first question before this Court, therefore, is whether Eskofot has pleaded facts sufficient to establish subject matter jurisdiction.

### 1. *FTAIA*

Defendants maintain that the Court's jurisdiction to hear antitrust claims brought by foreign competitors derives from the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a (the "FTAIA").[4] Plaintiff Mem. at 13. Defendants note that the FTAIA was intended to exempt from U.S. antitrust law conduct that lacks the necessary level of domestic effect. *See Eurim–Pharm GmbH v. Pfizer, Inc.,* 593 F.Supp. 1102, 1105–06 (S.D.N.Y.1984). The FTAIA provides, in relevant part, that sections 1 through 7 of the Sherman Act:

> shall not apply to conduct involving trade or commerce (*other than import trade or import commerce*) with foreign nations unless (1) such conduct has a direct, substantial and reasonably foreseeable effect (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States

15 U.S.C. § 6a (emphasis added).

Defendants contend that Eskofot's complaint pleads no facts from which the Court

---

1. The System is also known by its Du Pont trade name, Silverlith ("Silverlith"), and its Eskofot trade name, Proff Print High Speed ("Proff Print").

2. Plaintiff classifies as "consumables" three components of the direct-to-plate silver halide metal platemaking system: the plate processor, the plate, and the processing chemicals.

3. The complaint defines the System as consisting of four components: cameras or other hardware, plate processors, plates, and processing chemicals. Defendant Mem. at 10.

4. The parties do not dispute that both Eskofot and Du Pont U.K. are foreign corporations.

can conclude that defendants' conduct had a direct, substantial, and reasonably foreseeable effect in the United States. Defendant Mem. at 14. Before reaching this issue, however, the Court must first decide whether the FTAIA is applicable to this case. Plaintiff argues that the FTAIA does not apply to a claim that trade, involving foreign nations, has affected the import commerce of the United States. Plaintiff Mem. at 14. Eskofot further argues that the instant dispute relates directly to import commerce. Consequently, Eskofot concludes, this case should not be considered under the FTAIA "direct, substantial and reasonably foreseeable" standard.

Defendants dispute plaintiff's conclusion, and urge that plaintiff may not escape application of the FTAIA by asserting in conclusory terms that domestic commerce has been affected. Defendants also claim that the FTAIA governs the extraterritorial application of the American antitrust laws and is not confined to export transactions.

■ This Court notes that the FTAIA, by its own terms, clearly states that the provisions of the Sherman Act do not apply to conduct involving trade or commerce, "other than import trade or import commerce," with foreign nations. The implication that the Sherman Act provisions continue to apply to import trade and import commerce is unmistakable. Plaintiff contends that defendants' actions have precluded it from exporting goods into the United States. Consequently, plaintiff's pleading alleges an impact on import trade and import commerce into the United States.

■ Rather than the FTAIA's "direct, substantial and reasonably foreseeable" standard, the Court must determine whether the challenged conduct has, or is intended to have, any anti-competitive effect upon United States commerce. See National Bank of Canada v. Interbank Card Ass'n, 666 F.2d 6, 8 (2d Cir.1981). Eskofot alleges that defendants' actions have had a significant anti-competitive effect upon United States commerce. Moreover, Eskofot alleges facts

which, if true, amply support its contention. As a result, this Court has subject matter jurisdiction.[5]

Eskofot alleges that both it and Du Pont always planned to market and sell, respectively, the Proff Print and Silverlith systems and their component parts in the United States. Eskofot further asserts that it would have sold its Proff Print system in the United States if it were not for defendants' conduct, and that defendants still intend to market their Silverlith system in the United States. Defendants dispute these assertions and contend that they are merely conclusory allegations that should be accorded little weight in determining whether to apply American antitrust laws.

The Court notes that, in the present posture of this action, factual questions must be resolved in favor of plaintiff. The instant allegations, for example, require a careful investigation of the records of the various parties before they can be resolved. Whether Eskofot or either of the defendants initiated research to develop the System with the expectation of selling significant quantities in the American market is very much a question of fact. Certainly Eskofot and defendants have the capacity to sell their systems in the United States, and both Du Pont and Eskofot currently sell a certain percentage of their products in the United States. Whether Du Pont or Du Pont U.K. has sold, developed plans to sell, or harbors ambitions of selling the Silverlith system in the United States are questions of fact. Resolving these questions and other factual questions in favor of the plaintiff, this Court finds that plaintiff has sufficiently demonstrated that defendants' conduct impacted the import trade of the United States.

Plaintiff must still demonstrate that it was prevented, by defendants' actions, from marketing the Proff Print system in the United States. Otherwise, it has failed to demonstrate an anti-competitive effect on United States' commerce. However, again, this Court finds that plaintiff has sufficiently al-

---

5. The Court notes that even if the FTAIA standard were the appropriate one, plaintiff has alleged facts from which a reasonable trier of fact could conclude that defendants' conduct had a direct, substantial, and reasonably foreseeable effect in the United States.

leged facts which, if true, support its contention that defendants' conduct was anti-competitive.

In sum, plaintiff has alleged that: its sale of the Proff Print system in the United States was precluded by defendants' actions, defendants intend to sell Silverlith in the United States, defendants have already initiated marketing activities in the United States to facilitate future sales, and that consumers in the United States will be negatively affected by the higher prices and reduced output that flow from the emergence of a monopoly. Defendants do not convincingly dispel these concerns or transform plaintiff's factual allegations into mere speculative inferences simply by revealing that plaintiff's assertions are not quantitatively definite or that plaintiff has failed, at this stage of the action, conclusively to demonstrate its assertions. Plaintiff does not have to meet such standards, in the present posture of the instant action, and it is not apparent, as defendants urge, that any potential restraint on U.S. commerce would be *de minimis*.

This Court cannot conclude that no set of facts would support plaintiff's claim that defendants' conduct has had an anti-competitive effect on trade or commerce in the United States. Moreover, this Court cannot even conclude that the conduct alleged by plaintiff has not had a direct, actual, and foreseeable effect in the United States. Accordingly, this Court cannot dismiss this action for lack of subject matter jurisdiction.

## B. *Personal Jurisdiction*

■ Defendants accurately note that plaintiff bears the burden of establishing the existence of personal jurisdiction and assert that plaintiff has failed to do so as regards defendant Du Pont U.K. The Court observes that on a motion to dismiss, plaintiff is only obligated to allege facts sufficient to establish a prima facie showing of jurisdiction. *See, e.g., Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).

Defendants contend that (1) Du Pont U.K. is not subject to personal jurisdiction under New York law, (2) Du Pont U.K. is not subject to personal jurisdiction by virtue of section 12 of the Clayton Act ("Section 12"), (3) Fed.R.Civ.P. 4(k)(2) ("Rule 4(k)(2)") does not authorize the assertion of jurisdiction over Du Pont U.K., and (4) the requisite constitutional nexus between Du Pont U.K. and the forum does not exist. Plaintiff, in turn, forwards a number of bases for personal jurisdiction. This Court finds that personal jurisdiction exists, pursuant to Rule 4(k)(2), and therefore finds it unnecessary to analyze the other possible bases for personal jurisdiction.

### 1. *Rule 4(k)(2)*

Rule 4(k)(2) provides that:

[i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed.R.Civ.P. 4(k)(2).

### a. *Applicability of Rule 4(k)(2)*

The effective date provision to the amendments of the Federal Rules of Civil Procedure provides that the amendments "shall take effect on December 1, 1993, and shall govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." *Orders of the Supreme Court of the United States Adopting and Amending Rules,* US Order 93–17 (April 22, 1993), *reprinted in* Fed.Civil Judicial Procedure & Rules 1993 Supp., at 3 (West 1993). The instant action was filed in September 1993. Consequently, this Court must first determine whether it is "just and practicable" that Rule 4(k)(2) apply to this case.

■ The Court preliminarily notes that the instant action was filed only three months prior to the effective date of Rule 4(k)(2). In fact, stipulations by the parties allowed defendants extensions in time to answer or otherwise respond to plaintiff's complaint, and the instant motion to dismiss was

not filed until February 1994, two months after the effective date. Moreover, defendants, in their papers in support of their motion, specifically address Rule 4(k)(2) as a possible basis for personal jurisdiction. *See* Defendant Mem. at 28. Although they contend that the Court does not have personal jurisdiction under Rule 4(k)(2), they do not make this argument based on the inapplicability of that rule, but rather on the grounds that the substantive requirements of the rule are not met.[6] Clearly, no undue surprise or prejudice would result from this Court finding that Rule 4(k)(2) provides a possible basis for personal jurisdiction, and defendants have proffered no argument to the contrary.[7]

Accordingly, this Court finds that, based on the specific facts of the instant case, it would be just and practicable to apply Rule 4(k)(2).

b. *Constitutional Requirements*

Rule 4(k)(2) only provides federal courts with personal jurisdiction over a foreign defendant in federal question cases and only if the foreign defendant has sufficient contacts with the United States to satisfy due process requirements. As a result, after establishing that the rule is, in fact, applicable, plaintiff must further demonstrate that Du Pont U.K. has the requisite aggregate contacts with the United States. Defendants maintain that plaintiff has failed to satisfy this requirement.

In order to comport with due process of law requirements under the Fifth Amendment, defendant Du Pont U.K. must have at least minimum contacts with the United States at large. Minimum contacts analysis is used to determine whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (citation omitted). The Second Circuit has addressed the question of what activities of a foreign corporation satisfy the minimum contacts test and has listed the following factors for meeting the standard: (1) transacting business in the United States, (2) doing an act in the United States, or (3) having an effect in the United States by an act done elsewhere. *See Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir.1972).

Applying the third factor first, personal jurisdiction may be asserted by courts where a foreign corporation, through an act performed elsewhere, causes an effect in the United States. *See, e.g., SEC v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir.1990).[8] In the instant action, Eskofot alleges that defendants prevented its participation in the United States market for direct-to-plate silver halide metal platemaking systems. As this Court has already concluded, plaintiff adequately alleged a number of facts, which if true, establish subject matter jurisdiction. For the same reasons stated in Section A of

---

6. It is only after plaintiff indicates the effective date of Rule 4(k)(2) in its own papers and establishes that defendants failed to dispute the applicability of Rule 4(k)(2), Plaintiff Mem. at 38 n. 19, that defendants first contend that the Rule should not be applied retroactively.

7. Defendants merely assert that the instant case was filed after the effective date of Rule 4(k)(2) and that the rule should not be given retroactive effect. They offer no argument in favor of such a finding, nor do they even attempt to demonstrate why it would not be just and practicable to apply the rule to the instant action. *Cf. Arango-Arandondo v. I.N.S.*, 13 F.3d 610, 612 (2d Cir.1994) ("[w]e see no reason why it is not 'just and practicable' to apply the amended Rule to the facts of this case, and the Government has prof-

fered no argument as to why we should rule differently.")

8. In an international context in particular, the third test must, however, be applied with caution. The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him. It is not enough that causing an injury within the forum may be foreseeable, within the meaning of proximate causation and tort liability; rather, the foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *Herbstein v. Bruetman*, 768 F.Supp. 79, 81–82 (S.D.N.Y.1991) (citations, quotations and ellipses omitted).

this Opinion, these factual allegations are sufficient to preclude this Court, at the present stage of this action, from finding that defendants, including defendant Du Pont U.K., took no actions which have had a significant effect in the United States. Once again, this Court notes that a factual question exists as to whether defendants engaged in anti-competitive activity that significantly affected the United States market for direct-to-plate silver halide metal platemaking systems.

Defendants contend that Eskofot's assertion, that this Court has jurisdiction with regard to Du Pont U.K. stemming from acts engaged in outside of the United States that have had an effect in the United States, should be viewed with caution. They argue that this theory of jurisdiction requires a high threshold of foreseeability. *See Huang v. Sentinel Government Sec.*, 657 F.Supp. 485, 489 (S.D.N.Y.1987) (Leisure, J.) (defendant must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him). Defendants then assert that the only act allegedly committed by Du Pont U.K. that is identified by plaintiff as relevant to this theory of jurisdiction is the termination of the consumables agreement. This Court finds, however, that plaintiff has alleged a number of other facts which, if true, adequately establish the requisite level of foreseeability. These facts include, *inter alia*, that plaintiff intended to market the Proff Print system in competition with the Silverlith system, that plaintiff planned to sell its system in the United States, that defendants embarked on a deliberate program of eliminating Eskofot as a competitor, that defendants intended to create for themselves the ability to charge monopoly prices, that defendants intended to market Silverlith in the United States, and that the monopoly effects of defendants' ac-

tions would carry over into the United States.[9] In the present posture of this case, plaintiff need not demonstrate an effect in the United States, but must simply allege facts that sufficiently support such an effect. The Court finds that plaintiff has met this obligation.

In sum, assuming the allegations in Eskofot's complaint to be true, the consequences which have been caused by defendants' conduct are sufficient to subject defendants to this Court's jurisdiction.

Buttressing the Court's conclusion that it has personal jurisdiction, are the activities in which Du Pont U.K. participated in the United States. Eskofot alleges, and defendants do not deny, that Du Pont U.K. personnel have participated in various trade shows in the United States which have promoted Silverlith. Eskofot also claims that Du Pont U.K. has marketed Silverlith in the United States by other methods and that its employees have traveled to the United States to assist with the testing of Silverlith systems. These factual avowals must be treated as true by this Court for purposes of the instant motion to dismiss.

Defendants, in turn, declare that Du Pont U.K. conducts no business in the United States, has no office or employees in the United States, and is not licensed to conduct business in the United States by any state. Defendant Mem. at 26–27. They further aver that Du Pont U.K does not maintain any bank accounts in the United States, nor does it file annual tax returns here. *Id.* at 27. Further, all of Du Pont U.K.'s books, records, and accounts are maintained in the United Kingdom. *Id.*

Although Du Pont U.K.'s transaction of business in the United States, assuming all plaintiff's factual allegations to be true, still might be insufficient to permit personal jur-

9. This Court is not convinced by defendants' efforts to limit plaintiff's action to one for breach of contract. The complaint asserts antitrust causes of action, and the facts alleged in support of the antitrust claims are not limited to simple breach of contract allegations. Therefore, defendants' arguments that: (1) the only act relevant to personal jurisdiction alleged by plaintiff is the termination of the consumables agreement, Defendant Mem. at 28; (2) Du Pont U.K. is not aware of any plan on the part of Eskofot to sell direct-to-plate silver halide systems in the United States, *id.;* and (3) the gravamen of plaintiff's cause of action is not the exhibition of products at trade shows in the United States but the cancellation of its agreements with Du Pont U.K., *id.* at 32; are unavailing. Such statements are ineffective to limit plaintiff's action, and to the extent that they have force, they serve only to put material facts in dispute.

isdiction, it is an additional factor that supports the Court's personal jurisdiction. A second such factor is the activity in which Du Pont U.K. has engaged in the United States that was entirely unrelated to the Silverlith system. Eskofot alleges that Du Pont U.K has conducted a great deal of marketing, advertising and selling in the United States. Eskofot points to the huge flow of goods that originates at Du Pont U.K. and is eventually delivered into the United States.

At present, prior to discovery, plaintiff is unable to specifically allege which goods, if any, are exported into the United States by Du Pont U.K. and which goods are sold, in England, by Du Pont U.K to Du Pont and then brought into the United States by Du Pont. Consequently, Eskofot has pled insufficient facts to establish personal jurisdiction solely on the basis of general contacts to the United States which constitute an availment of the privileges of American law. These allegations, however, when combined with Eskofot's other contentions, assert a significant contact with the United States which precludes this Court from concluding that personal jurisdiction does not exist.[10]

In sum, in the present posture of this action and presuming all of plaintiff's factual allegations to be true, this Court cannot conclude that Du Pont U.K. does not have sufficient contacts to the United States to permit personal jurisdiction. This Court further finds that the exercise of jurisdiction over Du Pont U.K. does not violate traditional notions of fair play and substantial justice. Consequently, this Court declines to consider the other bases that plaintiff asserts to demonstrate this Court's personal jurisdiction with respect to Du Pont U.K.

C. *Indispensable Party*

This Court, having concluded that sufficient bases for personal jurisdiction over Du Pont U.K have been alleged, need not reach the question of whether Du Pont U.K. is an indispensable party. The question of Du Pont U.K.'s indispensability is only relevant to determine whether, in Du Pont U.K.'s absence, this Court still has subject matter jurisdiction. Consequently, the continued presence of Du Pont U.K. renders the question of indispensability irrelevant.

D. *International Comity*

Defendants urge this Court to dismiss or stay the instant action on grounds of international comity and judicial efficiency. They observe that plaintiff commenced the English action in April 1993, more than four months prior to the commencement of this action. Defendant Mem. at 37. Defendants advance the position that the doctrine of international comity compels deference to the decisions of a foreign court "if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard S.S. Co. v. Salen Reefer Services AB*, 773 F.2d 452, 457 (2d Cir. 1985); Defendant Mem. at 31. Defendants note that the Court has the inherent power to dismiss or stay an action in deference to a parallel foreign action, *see Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*, 770 F.Supp. 880, 884 (S.D.N.Y.1991) (citations omitted), and urge that the instant action be dismissed or stayed.

Plaintiff, in turn, argues that dismissing or staying the instant action would be an extraordinary remedy and that, ordinarily, this Court should exercise jurisdiction concurrently with foreign courts. *See China Trade and Dev. Corp v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir.1987) ("[p]arallel proceed-

10. Defendants challenge many of plaintiff's factual allegations. For example, defendants contest Eskofot's assertions that it intended to market Proff Print in the United States, that Du Pont U.K. planned to market Silverlith in the United States, that defendants deliberately terminated their contracts with Eskofot to obtain monopoly power, that defendants terminated the agreements with the knowledge that it would have an effect on United States commerce, that such an effect was intentional, that Du Pont U.K. current-

ly markets and sells Silverlith in the United States, and that Du Pont U.K. is selling millions of dollars worth of products, unrelated to Silverlith, in the United States. Defendants succeed in placing these factual allegations in dispute, but not in demonstrating that they are no more than argumentative inferences. Consequently, as alleged facts, they must be viewed as true, and are therefore sufficient to defeat defendants' motion to dismiss for lack of personal jurisdiction.

ings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.") (quotations and citations omitted). Eskofot urges that such a course of action is especially appropriate when an action involves the enforcement of United States antitrust laws. Eskofot notes that there is a strong interest in ,the rigorous enforcement of American antitrust laws.

 Defendants correctly indicate that a number of similar issues need to be resolved in both the English action and the one pending before this Court. Both actions concern the repudiation, by Du Pont U.K., of its contracts with Eskofot and the allegedly anti-competitive effects of such conduct. Plaintiff alleges in both actions that Du Pont U.K.'s conduct will reduce or eliminate competition for the supply of direct-to-plate silver halide systems. This Court notes that resolution of the antitrust claims, in both actions, will require a determination of the appropriate market and the share of that market occupied by defendants. In addition, the parties in the English action include two of the parties in the instant action, Eskofot and Du Pont U.K., and the circumstances out of which the two actions arise are identical.

Plaintiff, however, describes a number of differences in the two actions. Du Pont is not a named defendant in the English action. In fact, Eskofot asserts that Du Pont U.K. specifically refused to provide Eskofot with any discovery from Du Pont in the English action. Plaintiff Mem. at 67. The English action does not concern American antitrust law, nor are possible effects in the United States at issue in that litigation. The English action does not involve questions of Du Pont's relationship with Du Pont U.K., nor does it involve Du Pont's alleged attempts to exclude Eskofot from the American market for the System.

Instead, the English action asserts two claims for relief, breach of contract and violation of Article 86 of the Treaty of Rome. Eskofot asserts neither of these two claims in the action pending in the United States. Plaintiff does, however, state causes of action in the United States suit arising out of purportedly illegal mergers conducted by defendants. These mergers are not at issue in the English action. *Id.* at 68.

This Court may stay a proceeding based on comity and judicial efficiency even if the outcome of the foreign proceeding would not resolve all of the issues pending in the American action. This Court finds, however, that there are many important issues that will not be reached in the English action, and in addition, any outcome there will be arrived at without the participation of Du Pont, a major party in the instant action. For example, American antitrust law will not be at issue in the English action, nor will a determination by a foreign court under Article 86 of the Treaty of Rome greatly impact this Court's findings under American antitrust law. Moreover, it is unclear that the English action will be concluded any time in the near future.[11]

As a consequence, although the disposition of the English action may narrow the issues and redefine the controversy between the parties, this Court cannot conclude that a stay or dismissal of the instant action is compelled by international comity and judicial efficiency.

For the reasons stated above, the existence of the English action does not warrant the extraordinary step of staying or dismissing the instant action. Accordingly, defendants' motion for a stay or dismissal of the instant action on the grounds of comity and judicial efficiency should be denied.

E. *Plaintiff's Claim Under Section One of the Sherman Act*

 Section one of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." In order to state a claim under section one of the Sher-

---

**11.** Plaintiff asserts that it is likely that the English action will not go to trial until late 1995 or early 1996. Plaintiff Mem. at 71.

man Act, an antitrust plaintiff must adequately plead: "(1) concerted action, (2) by two or more persons, and (3) the concerted action must unreasonably restrain interstate or foreign trade or commerce." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832, 837 (S.D.N.Y.1988) (Leisure, J.). In order to dismiss a claim, pursuant to Fed.R.Civ.P. 12(b)(6), this Court must determine that the complaint itself is not legally sufficient. *See id.* at 836. The question currently before this Court, therefore, is whether Eskofot has met the minimum pleading requirements for alleging a claim under section one of the Sherman Act.

Defendants maintain that plaintiff's claim is deficient on its face because it fails sufficiently to allege concerted action within the meaning of section one of the Sherman Act. Defendant Mem. at 38. They note that a corporate parent and its wholly-owned subsidiary are legally incapable of conspiring within the meaning of the antitrust laws. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). Defendants then assert that Eskofot nowhere alleges that Du Pont's mergers, acquisitions, and supply agreements with other companies shared a "unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful agreement" with the defendants. *See International Dist. Centers v. Walsh Trucking*, 812 F.2d 786, 793 (2d Cir.), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987) (citation omitted); Defendant Mem. at 40. Lastly, defendants contend that although a merger agreement may under some circumstances support a Sherman Act claim, plaintiff has failed to allege any facts to suggest that any of the agreements amounted to a conspiracy to restrain trade. Defendant Mem. at 40.

Plaintiff responds by preliminarily noting that the skeptical view of Rule 12(b)(6) motions taken by the courts is particularly acute in the context of antitrust actions. *See, e.g., Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Services*, 746 F.Supp. 320, 325 (S.D.N.Y.1990) ("dismissals on the pleadings are especially disfavored in antitrust cases"). It then argues that it has exceeded Sherman Act § 1 pleading requirements. Eskofot alleges that defendants and named third parties executed merger and supply agreements which enabled defendants to control the relevant markets, and which precluded Eskofot from participating in the marketing and sale of direct-to-plate silver halide metal platemaking systems and consumables. Plaintiff Mem. at 61. Eskofot provides information concerning the parties that were involved in the agreements and the specific agreements themselves. It also alleges that these agreements have had an unreasonable anti-competitive effect.

Plaintiff maintains that it is not required by section one of the Sherman Act to allege that defendants' agreements constituted a conspiracy to restrain trade, but rather that mergers and contracts which unreasonably restrain trade, standing alone, comprise a section one violation. Plaintiff contends that a section one violation can be established by showing that defendants have entered into an agreement or otherwise engaged in concerted conduct, the effect of which, is detrimental to competition. Plaintiff Mem. at 62. In other words, plaintiff urges that all that is needed is a concerted arrangement entered into for the purpose of reducing competition, or which, regardless of purpose, significantly tends to reduce competition. Plaintiff Mem. at 63.

Plaintiff makes clear that it does not allege that defendants engaged in a conspiracy in restraint of trade. Therefore, to support its section one claim, it must allege a contract or combination in restraint of trade. It alleges that there were various contracts and mergers entered into which had the effect of restraining trade. It does not allege, however, that the combining and contracting parties had a unity of purpose or a common design and understanding. Instead, plaintiff relies on the proposition that all that is necessary to assert a section one cause of action is an agreement or combination, of any kind, that has an anti-competitive result. Defendants, in turn, contend that, in order to state a section one claim based on an unlawful combination, plaintiff must allege that the parties shared a unity of purpose prior to the combination.

The question before this Court is whether plaintiff, in order to state a cause of action under section one of the Sherman Act, must assert that the parties that entered into contracts and merger arrangements with defendants, shared a unity of purpose with defendants before the agreements were entered into. Defendants rely on *International Distribution Centers v. Walsh Trucking Co., Inc.*, 812 F.2d 786, 794 (2d Cir.1987), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987) for the proposition that a combination, in order to violate section one, must have been achieved by parties who, prior to the actual combination, had a common purpose. Defendants, however, misinterpret *Walsh*. That case deals specifically with what is required to show a "conspiracy" in restraint of trade.[12]

Defendants similarly misinterpret *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). That case states, "the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto* at 764, 104 S.Ct. at 1470. That case, however, also deals with a section one *conspiracy*

claim. Moreover, the rule that *Monsanto* purports to establish is one that prevents independent action from being subject to section one of the Sherman Act. In other words, under *Monsanto*, it is not enough that defendant and others acted in a way that restrained trade, if they acted independently of one another. Thus, to prevail on a conspiracy claim under section one, a plaintiff must demonstrate that there was a "conscious commitment to a common scheme." *Monsanto* at 764, 104 S.Ct. at 1470.

██ The situation in the instant case is quite different. There is no allegation of conspiracy; rather, plaintiff alleges that defendants entered into combinations and contracts in restraint of trade. There is no need to show a common purpose in order to prove the absence of independent action because the relevant merger or contract amply demonstrates that there was no independence of action. Additionally, there is no need to demonstrate a unity of purpose to establish conspiracy because conspiracy is not alleged.[13]

██ In order to state a cause of action under section one, plaintiff simply needs to allege that there was a contract or combination and that contract or combination resulted in an unreasonable restraint of trade. *See*

12. "Unlike the *proof required to establish a conspiracy* to monopolize under section 2, a specific intent to create a monopoly is not required under section 1. At a minimum, however, the circumstances must be such as to warrant a jury in finding that the *conspirators* had a unity or purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Walsh* 812 F.2d at 793 (citations and quotations omitted) (emphasis added). Clearly, *Walsh* stands for the proposition that unity of purpose is required when conspiracy is alleged under section one, but it nowhere requires the same common understanding when contract or combination is alleged.

Defendants cite *Caremark Homecare, Inc. v. New England Critical Care, Inc.*, 700 F.Supp. 1033, 1035 (D.Minn.1988) and *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 486 (5th Cir.1984) for the proposition that "courts have consistently held that an acquisition will not give rise to a Section One claim unless the companies involved combined to restrain trade *prior* to the acquisition." Reply Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint ("Defendant Reply") at 44 (emphasis in original). *Caremark*, however,

deals with a conspiracy claim and specifically holds "[t]hus the element of a *conspiracy* has not been properly pleaded." *Caremark*, 700 F.Supp. at 1035 (emphasis added).

Similarly, in *Domed Stadium*, the court specifically found that no combination occurred in violation of section one of the Sherman Act based on the fact that it had already determined that the combination, in that case, did not violate section seven of the Clayton Act. The court, in that case, also found that there was no conspiracy in violation of section one of the Sherman Act because the defendants did not conspire before their merger, and after their merger, as one entity, they could not conspire. That court did not find, however, that no combination in violation of section one occurred *because* the defendants did not conspire prior to combining.

13. Defendants attempt to collapse the independent bases that combination and contract provide for the existence of a section one violation. If plaintiff always needed to demonstrate that there existed a unity of purpose between defendants and others, then all combination and contract claims would necessarily encompass a conspiracy claim.

*United States v. First Nat'l Bank & Trust Co.*, 376 U.S. 665, 669–70, 84 S.Ct. 1033, 1035–36, 12 L.Ed.2d 1 (1964) (a combination that eliminated significant competition was sufficient to constitute an unreasonable restraint of trade in violation of § 1 of the Sherman Act); *United States v. United States Gypsum Co.*, 438 U.S. 422, 435, 436 n. 13, 98 S.Ct. 2864, 2872, 2873 n. 13, 57 L.Ed.2d 854 (1978) (an agreement may violate section one of the Sherman Act if it has either an unlawful purpose or an anti-competitive effect).

Plaintiff has alleged specific contracts and combinations that were entered into, and has further alleged that these actions resulted in an unreasonable restraint of trade. Accordingly, defendants' motion to dismiss plaintiff's Sherman Act § 1 claim, pursuant to Fed.R.Civ.P. 12(b)(6), must be denied.

### F. *Striking of Paragraphs in the Complaint*

Defendants urge this Court to strike the paragraphs in the complaint pertaining to the parties' efforts to settle this dispute. Defendant Mem. at 41–45. Fed.R.Civ.P. 12(f) provides that "[u]pon motion made by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike allegations from a pleading should be granted where "no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976).

Defendants contend that plaintiff's allegations in paragraphs 60–66 and 82 should be stricken from the complaint because they rely upon evidence that would be inadmissible under Fed.R.Evid. 408. There is support for the proposition that allegations pertaining to compromise negotiations should be stricken. *See Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y.1992); *Braman v. Woodfield Gardens Associates*, 715 F.Supp. 226, 230

(N.D.Ill.1989). Defendants maintain that plaintiff refers to an August 19, 1992 meeting between plaintiff and Du Pont U.K, at which, Eskofot demanded compensation for the termination of the agreements between the parties. Du Pont U.K. allegedly offered a proposal to renegotiate the contracts, and defendants characterize the ensuing negotiations as settlement discussions.

Plaintiff seeks to use certain statements and representations made during the negotiations as support for its claims against defendants. Specifically, plaintiff alleges that at the August 19, 1992 meeting, Du Pont U.K. presented a document which recognized that there was disruption to the existing business plans and forecast revenue income of Eskofot. Complaint at ¶ 60. Defendants advance the position that plaintiff violates Fed. R.Evid. 408, which prohibits evidence pertaining to offers to settle or compromise a claim,[14] and that plaintiff's allegations should be stricken, pursuant to Fed.R.Civ.P. 12(f). Defendants point out that, in order for a disputed claim to exist for purposes of Rule 408, a legal complaint need not have been filed by one of the parties, and that all that is needed is an actual dispute or an apparent difference of opinion between parties as to the validity of a claim. *See Alpex Computer Corp. v. Nintendo Co., Ltd.*, 770 F.Supp. 161, 163 (S.D.N.Y.1991); *Kleen Laundry & Dry Cleaning Servs. v. Total Waste Management Corp.*, 817 F.Supp. 225, 229 (D.N.H.1993). Asserting that, at the time of the discussion, the parties contemplated that litigation might be necessary, defendants seek to have the Court strike references to these negotiations.

Plaintiff notes that motions to strike are generally viewed with disfavor and are infrequently granted. Plaintiff Mem. at 83. *See Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir.1976); *Sunshine Cellular v. Vanguard Cellular Systems, Inc.*, 810 F.Supp. 486, 499 (S.D.N.Y.1992); *Bennett v. Spoor Behrins Campbell & Young, Inc.*, 124

---

**14.** Specifically, Rule 408 provides:

Evidence of (1) furnishing or offering or promising to furnish or (2) accepting or offering or promising to accept, a valuable consideration or attempting to compromise a claim which was disputed as to either liability or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. Fed.R.Evid. 408.

F.R.D. 562, 563 (S.D.N.Y.1989) (Leisure, J.). Plaintiff then contends that defendants' statements were not made during settlement negotiations. Eskofot observes that the challenged paragraphs of the complaint do not characterize the meeting as a settlement discussion nor does the complaint allege that a settlement offer was made by any party. Plaintiff Mem. at 84. Plaintiff further contends that defendants did not offer it valuable consideration, and that without such an offer, Rule 408 does not apply. Lastly, plaintiff asserts that the allegations of the complaint, even if they relate to settlement discussions, are admissible on other grounds.

This Court views with skepticism plaintiff's claims that the August 19, 1992 meeting between plaintiff and Du Pont U.K did not involve settlement discussions. The Court does not find it dispositive, or even particularly strong evidence, that the disputed paragraphs of the complaint never characterize those negotiations as "settlement discussions." Certainly no plaintiff, aware of Rule 408, would specifically frame its complaint in terms that violate that rule.

The Court also views with suspicion plaintiff's avowal that defendants did not offer valuable consideration. The Court notes that such consideration need not take the form of a lump sum payment, nor even compensation that is characterized as such. Rather, the renegotiation of contracts can itself be valuable consideration. Finally, the Court is unconvinced that the disputed paragraphs would be admissible on other grounds, if they are found to relate to settlement discussions.

The Court, however, declines to decide these issues on the current record. When confronted with a motion to strike a portion of a pleading, a court should consider whether there is any possibility that the pleading could form the basis for admissible evidence. See Lipsky, 551 F.2d at 893.[15] The Court notes the preliminary stage of this proceeding, and finds that the questions raised by defendants will be more easily determinable after adequate discovery. Cf. Bennett, 124 F.R.D. at 564. For example, there are still questions concerning how the August 19, 1992 meeting between plaintiff and Du Pont U.K should be characterized, and whether the paragraphs in dispute might be admissible on other grounds. Although the Court, views it as possible that the disputed paragraphs will ultimately be stricken, pursuant to Fed.R.Civ.P. 2(f) and Fed. R.Evid. 408, it finds that it would be improper to do so, on the facts of this case, at the present point in the proceeding.

Accordingly, defendants' motion to strike paragraphs 60–66 and 82 of the complaint is denied.

## G. Transfer

Defendants' final motion is one seeking that the instant action be transferred to the United States District Court for the District of Delaware. Title 28, United States Code, Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It is well established that "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir.1992) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988)). The Section's purpose "is to prevent the 'waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense....'" Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 (1960)).

---

15. Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint—on the grounds that the material could not possibly be relevant—on the sterile field of the pleadings alone.
Lipsky, 551 F.2d at 893.

The burden of demonstrating the desirability of transfer lies with the moving party. *See Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 521 (2d Cir.1989); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). Consequently, "[t]he moving party must make a clear-cut showing that transfer is in the best interests of the litigation." *Schieffelin & Co. v. Jack Co.,* 725 F.Supp. 1314, 1321 (S.D.N.Y.1989). Some of the factors for the court to consider in making this decision include: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See, e.g., Frasca v. Yaw,* 787 F.Supp. 327, 330–31 (E.D.N.Y.1992); *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.,* 745 F.Supp. 993, 996 (S.D.N.Y.1990); *Schieffelin & Co.,* 725 F.Supp. at 1321; *Turner v. Hudson Transit Lines, Inc.,* 724 F.Supp. 242, 243 (S.D.N.Y.1989); *Schneider v. Sears,* 265 F. Supp 257, 263 (S.D.N.Y.1967) (Weinfeld, J.). In the instant case, the Court finds that a weighing of these various factors dictates the denial of defendants' motion to transfer.

### 1. *Convenience of the Parties and Witnesses*

The location of witnesses and physical evidence is a major factor to be considered when evaluating a transfer motion. *See, e.g., Frasca v. Yaw,* 787 F.Supp. at 331; *Mobile Video Services, Ltd. v. National Ass'n of Broadcast Employees and Technicians,* 574 F.Supp. 668, 670–71 (S.D.N.Y. 1983); *Kraemer Export Corporation v. Peg Perego U.S.A., Inc.,* 1994 WL 86357, \*5, 1994 U.S.Dist. Lexis 3071, \*14 (S.D.N.Y. March 17, 1994) (Leisure, J.) ("The most significant factor for a court contemplating transfer is the convenience of party and non-party witnesses."). The convenience of both party and non-party witnesses may be the single most important factor in the analysis of whether a transfer should be granted. *Frasca v. Yaw,* 787 F. Supp at 331. *See, e.g., Hernandez v. Graebel Van lines,* 761 F.Supp. 983, 988–89 (E.D.N.Y.1991); *Nieves v. American Airlines,* 700 F.Supp. 769, 772 (S.D.N.Y. 1988). The convenience of the parties is also important. *See Muller v. Walt Disney Prods.,* 822 F.Supp. 1033, 1035 (S.D.N.Y. 1993); *Hernandez v. Graebel Van Lines,* 761 F.Supp. at 988.

In support of its motion to transfer, defendant argues that Du Pont would be more inconvenienced if this action proceeded in the Southern District of New York than would plaintiff if the action were transferred to the District of Delaware. Du Pont's offices, principal place of business, and its employees who allegedly had contacts with plaintiff are in Delaware. Defendant Mem. at 47. Defendants relate that plaintiff's principal executive office is in Denmark, and that consequently, all of its employees who are potential witnesses must travel a great distance in any event.

Plaintiff responds by arguing that defendants have not adequately specified which employees they intend to call as witnesses nor offered a description as to what those witnesses will testify. Eskofot states that it is willing to take all depositions of relevant Du Pont employees in Delaware. Eskofot further argues that it would be inconvenient for a number of witnesses which it intends to call at trial to travel to Delaware rather than New York. Eskofot advises that Du Pont conducts business and maintains several offices within the Southern District of New York, and that Eskofot personnel regularly fly to New York on business.

This Court finds that the convenience of the parties and witnesses slightly favors transfer to Delaware. Although it would unquestionably be easier for defendant Du Pont to litigate in the city where it is located, this Court finds that it would be more difficult for plaintiff to have a trial in Delaware. Where potential witness are scattered throughout the world, this Court cannot conclude, as defendants urge, that it would not be less

complicated to arrange for them to travel to New York City, New York rather than Wilmington Delaware.

The burden of traveling to Delaware from Europe is not much greater than traveling to New York. Similarly, however, the hardship that Du Pont would suffer if witnesses were forced to travel from Wilmington, Delaware to New York City, New York, is also not excessive. Consequently, this Court finds that the convenience of the parties and witnesses weighs only slightly in favor of granting defendants' motion to transfer.

### 2. *Location of Relevant Documents and Locus of Operative Facts*

Defendant Du Pont states that it is likely that any allegedly pertinent documents will be located in its Wilmington, Delaware headquarters. Defendant Mem. at 48–49. It further asserts that, to the extent that the events giving rise to this action have any connection to the United States, such events could only have occurred in Delaware. Plaintiff counters not with affirmative proof of greater access in New York, but rather, by stating that Du Pont has failed to show that moving the relevant documents from Wilmington would be particularly burdensome. Plaintiff similarly responds to defendants' locus of operative facts argument, not by stating that the locus of operative facts is in New York, but rather by alleging that it is in neither Delaware nor New York, but is in Europe.

This Court finds that the location of relevant documents and the locus of operative facts weighs slightly in favor of transfer.

### 3. *Plaintiff's Choice of Forum*

▉ As a general matter, plaintiff's choice of forum is given significant weight and will not be disturbed, unless the balance of factors weigh strongly in favor of granting the transfer. *See Seagoing Uniform Corp v. Texaco, Inc.,* 705 F.Supp. 918, 936 (S.D.N.Y. 1989) *(citing Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). The deference accorded to plaintiff's choice of forum, however, is diminished substantially where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred. *See Studiengesellschaft Kohle MBH v. Shell Oil Co.,* 93 Civ. 1868, 1993 WL 403340, 1993 U.S.Dist. Lexis 14131 (S.D.N.Y. October 7, 1993) (Leisure, J.). Although the weight accorded plaintiff's choice of forum is lessened in this case, this factor still weighs against transfer.

### 4. *Ability to Compel Attendance of Unwilling Witnesses*

Defendants do not discuss whether one forum affords a greater ability to compel the attendance of unwilling witnesses. Plaintiff points out that Du Pont employees are under defendants' control and can be compelled to appear at trial. Moreover, due to the proximity of Wilmington, there is a significant possibility that the other potential witnesses that could be compelled to appear in Wilmington could also be compelled to appear in New York. This Court, therefore, concludes that the ability to compel the attendance of unwilling witnesses only slightly weighs in favor of transfer.

### 5. *The Interest of Justice and Trial Efficiency*

A transfer of this litigation could delay this case, and might result in increased expense to both parties. The interest of justice and trial efficiency, however, does not weigh strongly one way or the other. The court finds that it slightly favors denial of the transfer motion.

### 6. *Conclusion*

On the whole, this Court finds an absence of powerful grounds either favoring or disfavoring defendants' transfer motion. Defendants have the burden of demonstrating the desirability of transferring this motion. *See Filmline (Cross–Country) Productions,* 865 F.2d at 521. Defendants have not made a "clear-cut showing that transfer is in the best interests of the litigation." *Schieffelin & Co.,* 725 F.Supp. at 1321. Accordingly, defendants motion to transfer must be denied.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss this action for lack of subject matter jurisdiction, defendants' motion to dismiss this matter as regards defendant Du Pont U.K. for lack of personal jurisdiction, defendants' motion to dismiss this matter for failure to join an indispensable party, defendants' motion to dismiss or stay this action on the grounds of comity, defendants' motion to dismiss plaintiff's Sherman Act § 1 claim for failure to state a claim upon which relief may be granted, defendants' motion to strike portions of plaintiff's complaint, and defendants' motion to transfer this action to the United States District Court for the District of Delaware are all denied. Parties are instructed to appear in Courtroom 1106 for a pre-trial status conference at 2:00 p.m. on February 17, 1994.

**SO ORDERED.**